1834.

Scott
v.
Young.

SCOTT *vs.* YOUNG, administratrix, &c.

The right, which is given to a party by the 85th rule of the court of chancery, to proceed with the examination notwithstanding the decision of the examiner that the witness is incompetent, or that the interrogatory is irrelevant and improper, cannot properly be exercised except in cases where the solicitor or counsel of such party has reason to doubt the correctness of the decision ; and if the solicitor or counsel who is conducting the examination insists upon proceeding, in a case where there is no reasonable ground for doubt as to the correctness of the decision, he will be . personally charged with the costs of the application to the court, to suppress the deposition, or to expunge the objectionable testimony.

The examiner has no right to reserve the question, upon an objection to the competency of a witness, or to the propriety of an interrogatory, where he has no rational doubt as to the validity of the objection. It is his duty in such cases to decide the question, and to leave the solicitor or counsel conducting the examination to proceed with the illegal testimony at the peril of being personally charged with costs.

It seems that an heir at law, who is liable for the debts of the decedent to the extent of the real estate descended to him, if they cannot be collected out of the personal estate, but who is so situated that he cannot be sued for such debts until the creditors have exhausted their remedy against the personal representative, is not a competent witness for such personal representative, in a suit by the creditor for the recovery of such a debt, to prove that the debt has been paid.

August 19.     IN February, 1815, Andrew Cannan conveyed to his son, Robert Cannan, and to his son-in-law, James Young, a farm in the town of Middlefield in the county of Otsego, and took from them a bond and mortgage on the same premises, conditioned to pay all the debts of Andrew Cannan, and to pay certain sums of money to his children within one year after his death. Among the sums thus secured to be paid to the children, was one of $250 to the complainant ; for the recovery of which this suit was brought. A further agreement was entered into, at the same time, by which R. Cannan and J. Young were to support and maintain A. Cannan and his wife for life. And to secure the performance of that agreement, a lease of the farm was given back to A. Cannan, for the term of his natural life, at a nominal rent. In 1817, J. Young bought all the interest of his brother-in-law, R. Cannan, in the Middlefield farm, and took a conveyance there-

for from him, subject to the payment of the several sums secured by the bond and mortgage, and subject to the support of A. Cannan and wife as specified in the agreement of February, 1815. R. Cannan subsequently removed to Canada and died. Andrew Cannan died in August, 1826, and James Young died intestate, six or seven months afterwards, leaving a considerable real and personal estate besides the Middlefield farm. After the death of J. Young, the defendant, his widow, administered on his estate, and Robert Young, one of his sons, became her surety in the administration bond. And his children and heirs took possession of the Middlefield farm, which was subsequently sold for their benefit. The bill in this cause was filed in October, 1831, to recover from the administratrix of J. Young the $250 secured to the complainant by the bond and mortgage, together with the interest thereof after one year from the death of A. Cannan. The defence set up by the answer of the defendant was, that several years previous to the death of J. Young, the complainant was indebted to him upon book account, to the amount of $140,75 ; that after his death, the complainant and defendant settled the accounts between them, including the $250 secured by the bond and mortgage, and that upon such settlement, $70 was found due to the complainant, which the complainant agreed to accept in full of all demands ; and that the $70, together with the interest thereon, was tendered to the complainant previous to the filing of her bill in this cause. In her answer, the defendant denied that the personal estate of the intestate was sufficient to pay all his debts, and insisted that she had fully administered all the estate which had come to her hands as administratrix. But by a stipulation, which was afterwards entered into by her solicitor, she agreed to admit that there were assets remaining in her hands unadministered, sufficient to satisfy the complainant's demand, as stated in the bill, with costs, if a decree should be obtained against the defendant. A replication having been filed to the answer, several witnesses were examined in favor of the respective parties. Among others, the defendant called Andrew Young, Robert Young, Daniel F. Young, and Eleanor N. Young, children and heirs at law of her deceased

*1834.*

Scott
v.
Young.

husband, for the purpose of proving an account in favor of the estate against the complainant, and to show the settlement set up in the answer. The defendant produced, before the examiner, a quit claim deed to herself, from the three first named children, dated on the day of their examination as witnesses, by which they conveyed to her all the real estate of which their father died seised, except the Middlefield farm which had previously been sold ; and also a general release to her of all their interest in the real and personal estate of the decedent. These several witnesses were objected to by the complainant as incompetent ; and the question as to the competency of the three first was reserved by the examiner. And he decided that Eleanor N. Young, who was under age and had executed no release, was an incompetent witness ; and the defendant's counsel insisted upon her being examined, notwithstanding such decision. Notice was given to the defendant's solicitor that a motion would be made at the hearing to suppress the depositions of these witness. The cause was brought to hearing upon the pleadings and proofs, and upon the motion to suppress the depositions.

*H. Lathrop,* for the complainant.

*H. Brown,* for the defendant.

THE CHANCELLOR. It is perfectly clear that Eleanor N. Young, one of the children of the intestate, who had not released her interest in the residuary estate of the decedent, was an incompetent witness for the defendant in this suit. And no excuse whatever is offered for proceeding with the examination of this witness, after the examiner had decided she was incompetent. The right reserved to a party, by the 85th rule of this court, to proceed with the examination notwithstanding the decision of the examiner that the witness is incompetent, or to insist upon an answer to an interrogatory although the examiner decides that the inquiry is irrelevant or improper, is only to be exercised in those cases where the solicitor or counsel of the party against whom the decision is made, has reason to doubt the correctness of such decision. The object of this part of the rule was to save the expense and delay of a

special application to the court in that stage of the suit, to review the decision of the examiner, and to correct it should it turn out to be wrong. The costs of the application to suppress the deposition, or to expunge the objectionable testimony, will therefore be charged upon the solicitor or counsel conducting the examination, when there has been a palpable abuse of the power to proceed in opposition to the decision of the examiner; or where there were no reasonable grounds for doubt as to the correctness of such decision. But if the court is satisfied that the solicitor or counsel conducting the examination really supposed that the decision of the master was wrong, the costs will be charged upon the party for whose benefit he was acting. Neither is the discretionary power given to the examiner by this rule, to decide upon the objection to the competency of a witness, or to the relevancy of the testimony offered, or to reserve the question, as he shall deem proper, an arbitrary discretion which will justify him *in foro conscientia*, in reserving the question where there can be no rational doubt in his mind as to the validity of the objection. It is his duty to decide the question in such a case, although he may lose the extra fees of taking down and furnishing copies of the illegal or improper testimony. And he cannot, consistently with his oath of office, permit a party to proceed with testimony which he knows to be illegal or irrelevant; unless the solicitor or counsel for such party thinks proper to proceed in opposition to the decision of the examiner, and at the risk of being compelled to pay the costs of suppressing such improper testimony, out of his own pocket. In accordance with these principles, the deposition of this witness must be suppressed, with costs. And I should direct those costs to be paid by the counsel who insisted upon proceeding with her examination after the examiner had decided that she was incompetent, if it appeared from the papers before me who that counsel was. But as that does not appear, the costs must be paid by the defendant.

The question as to the competency of the three sons of the intestate, as witnesses for the defendant, after the conveyance to her of all their interest in the estate of their father except

1834.

Scott
v.
Young.

as to the Middlefield farm, which had previously been sold, was properly reserved for the decision of the court. If the personal estate of the decedent was the primary fund for the payment of this debt, as appears to have been conceded by the parties previous to the commencement of this suit, I am inclined to think these witnesses were interested in defeating a recovery against the defendant, notwithstanding the conveyance of their interest in the estate of their father. If a debt cannot be collected of the personal representative of a decedent, the creditor may resort to the real estate in the hands of the heirs at law. And if the real estate has been sold by the heirs, before the commencement of the suit against them, they will be personally liable to the creditors, to the value of such estate. (2 *R. S.* 454.) The three sons who were examined as witnesses in this case, had conveyed their interest in the Middlefield farm, or it had been sold for their benefit, before the present suit was commenced; and they have since sold to their mother the residue of their interest in the real estate of their father. And if the debts due from the decedent cannot now be collected out of the personal estate which came to her hands as administratrix, these heirs will be liable to the creditors, to the extent of the value of the real estate which has been thus sold. If it should be said she takes the real estate subject to the equitable lien of the creditors for the payment of their debts out of the same, the interest of these witnesses would still be the same, as such lien would impair the security of the mortgage which they have upon the property for the payment of the purchase money. A recovery by the complainant against the administratrix would not be evidence, in a subsequent suit against the heirs, of the existence of the debt. But as it is admitted that personal assets came to the hands of the administratrix sufficient to pay the debts, if the heirs can defeat a recovery against her, it is evident the creditor cannot resort to them; the revised statutes making it necessary for the creditor, in such a case, to exhaust his remedy against the personal representatives, before he can proceed against the heirs at law. (2 *R. S.* 452, § 33.) From the opinion which I have formed as to other parts of this case,

Y.

however, it is not necessary for me to decide the question defin-itively as to the competency of these witnesses.

Considering them as competent, I am satisfied there was no settlement between the parties, in 1827, which can be con-sidered as binding. It was at most only an attempt to settle, and a partial computation of the matters in difference between them, which was finally broken off by the defendant's claim-ing to charge the complainant with a debt of her deceased son. No statement of the accounts in writing was made, and the witnesses are unable to say what accounts were claimed by the complainant and admitted by the defendant, though it is evident there was a considerable account on the part of the complainant against the estate. As it was merely an attempt to settle, which did not finally succeed, it would be the height of injustice to permit the admissions of one party only to be given in evidence, by witnesses who do not recollect enough of what was said to give the whole conversation. The run-ning accounts were not on interest; and the agreement to compute interest on both sides, in an attempt to settle their respective claims, but which did not result in a settlement, was not binding on either party. It is evident also, from what is proved to have occurred on the day on which Kelly was hang-ed, that the defendant did not consider what had taken place at a former day, as a binding settlement. The family account between these two sisters would probably have been arranged without much difficulty, if their children had not interfered to prevent it. As it has resulted, I am satisfied there has been no settlement or admissions as to the state of the accounts, which is legally binding upon either. It is probably impossible at this time to ascertain what is right in respect to the accounts be-tween the complainant and James Young; most of the items of which are of about 20 years standing. And the accounts between the parties do not appear to have been kept in such a manner that any reliance can be placed upon their books, as evidence of the different items. The book produced by the de-fendant, and made an exhibit, does not appear to have been kept as a regular account book, in which the items of debt and credit were entered as they occurred. All the items, ex-cept one, are dated in 1812 and 1814; and yet the account

of a third person, which immediately precedes this in the book, commences in 1815. The second and fourth items also appear to have been interlined after the two following charges were made ; and the credits of the account, if any were originally given, were probably entered on the lower part of the leaf, which appears to have been cut off. The accounts of the complainant are probably in no better situation, as her counsel declined making the original account an exhibit before the examiner. I think it probable that there might have been a balance upon these private accounts in favor of James Young, if we reject the complainant's claim for the support of her father during a portion of his latter days. But although the complainant had no legal claim upon her brother-in-law for such support, as it was not furnished at his request, I think no injustice will be done to either party in considering the accounts as balanced ; and leaving the amount secured to the complainant by the mortgage, with the interest thereon, to be paid out of the estate of James Young. I shall therefore decree that the defendant pay to the complainant the $250, with interest thereon from the 20th of August, 1827, with costs.